IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IMANUEL BASSIL ALI, BS-0997, )
    Plaintiff, )
)
    v. )  Civil Action No. 06-96
)
JOHN MCANANY, et al., )
    Defendants. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended the Motions to Dismiss submitted on behalf of defendants McAnany, Haywood, Hall, Helverding, D'Eletto and Folino (Docket No.16) and on behalf of defendant Hoffman (Docket No.19) be granted for failure to state a claim upon which relief may be granted.

II. Report:

Presently before the Court for disposition are motions to dismiss submitted on behalf of all defendants.

Imanuel Bassil Ali, an inmate at the State Correctional Institution at Greene has presented a civil rights complaint which he has been granted leave to prosecute in forma pauperis. In his complaint, Ali contends that he sustained injuries on January 22, 2004, when he was forced to provide blood for DNA sampling; that in order to draw the blood, McAnany had to puncture the plaintiff four times until he was successful; that defendants Hoffman, Haywood and Hall forcibly restrained him during the extraction process and did not intervene on his behalf; that defendant

Helverding did not provide him with prompt medical attention; that defendants D'Eletto and Folino delayed processing his grievance arising from this incident, and that the DNA sample could have been obtained through a mouth swab. As a result of these actions, the plaintiff contends he experienced excruciating pain and was unsuccessful in his attempts to seek medical attention. On May 8, 2006, the plaintiff filed an amended complaint which in more detail merely reiterates the same contentions. The facts alleged in the complaint and amended complaint are said to state a cause of action pursuant to 42 U.S.C. 1983 and the plaintiff invokes this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28, United States Code. All defendants now move to dismiss.

>It is provided in 42 U.S.C. §1983 that:
>
>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In reviewing a motion to dismiss, all well pleaded allegations of the complaint must be accepted as true. Estelle v. Gamble, 429 U.S. 97 (1976); Schrob v. Catterson, 948 F. 2d 1402 (3d Cir. 1991). Coupled with this requirement is the greater leniency with which pro se complaint are construed. Haines v. Kerner, 404 U.S. 519 (1972).

Defendants McAnany, Haywood, Hall, Helverding, D'Eletto and Folino ("the DOC defendants") claim that dismissal is appropriate on the grounds that the complaint fails to state a claim upon which relief may be granted, and additionally that no allegations of personal involvement are made against defendants D'Eletto and Folino. Defendant Hoffman moves to

dismiss on the grounds that Ali's claims are barred as a matter of law.

Pennsylvania has enacted legislation to provide a DNA data base for the detection of sex and other offenders. 44 Pa.C.S.A. 2301-2336. That statute provides for the collection of either blood or tissue samples under the aegis of the Pennsylvania State Police or its agents. The provisions for the collection of DNA samples are mandatory, and the statute further provides:

> Persons authorized to draw DNA samples under this section shall not be ... civilly liable for such activities when the person acted in a reasonable manner according to generally accepted medical and other professional practices. 44 Pa.C.S.A. 2317(b).

It is further provided that "reasonable force" may be employed for law enforcement and corrections personnel in securing those samples. 44 Pa.C.S.A. 2317(c). The constitutional validity of these provision has been upheld. Singleton v. Lavan, 834 A.2d 672 (Pa.Cmwlth.2003); Com. ex rel. Smith v. Pennsylvania, 829 A.2d 788 (Pa.Cmwlth.2003). Thus, the defendants were engaged in the execution of a valid penologic function and cannot be charged with impinging on the plaintiff's protected rights unless the manner in which the statutory directives were followed violated some constitutionally protected right.

In order to prevail on his claim, the plaintiff must demonstrate that the defendants exhibited deliberate indifference to a serious need of his thereby exposing him to an excessive health risk Nicini v. Morra, 212 F.3d 798 (3d Cir.2000). Claims of negligence or even medical malpractice without some more culpable state of mind do not rise to this level. Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).

Here, the plaintiff alleges that it took four attempts to secure the blood sample from him. While this is regrettable, we note that this is not a medically uncommon occurrence and was not

performed in any manner designed to cause him cruel and unusual treatment. Furthermore, by his own admission, any delay in receiving additional medical care was caused by the plaintiff's refusal to utilize his commitment name on any requests but rather his insistence on using an alias. As the Court observed in <u>Azeez v. Fairman</u>, 795 F.2d 1296, 1298-1301 (7th Cir.1986):

> Prisoners in maximum-security prisons do not dedicate themselves to making life easier for the guards and wardens. One way in which they can make life more difficult is by changing their names frequently. Every time a prisoner changes his name the prison staff must unlearn the old name and learn the new. If many prisoners happen to change their old names to the same new name (how may "Abdullah Muhammads" are there in the Illinois prison system tody, we wonder?), they can cause chaos...

* * *

> By requiring inmates to undergo the formalities of the statutory procedure the prison authorities prevent capricious, incessant, casual, sudden, harassing, on-the-spot name changes...  The prison allows prisoners to change their names and only compels them to do so by a procedure designed ... to weed out the pranksters, the wise guys, the troublemakers, the insincere.

* * *

> Maybe in the prison setting the answer to the question how far government must go to accommodate religious beliefs, is, not very far, because of the danger to the other prisoners if the prison authorities lose control and because persons who want to exercise their religious rights without interference can do so just by not committing crimes punishable by imprisonment.

> ... for there is no evidence that requiring an Islamic prisoner to undergo *nonburdensome* statutory procedure for changing his name imposes a religious hardship on him...

> But if there was a deprivation, still it was very slight and was outweighed by the benefits in security and good order from insisting that prisoners who want their new names recognized by the prison authorities follow (at least where it is feasible to do so) the simple statutory procedure which [the state] provides for changing one's name.

> Thus, if indeed, the plaintiff had a serious medical need requiring immediate medical

attention, all he had to do was employ his committed name as opposed to his alias. This he refused to do, and he now seeks to make claims that the defendants were indifferent to a serious medical need of his. Thus, his claim is meritless since it was the action of the plaintiff and not the defendants which prevented his receiving the medical attention he desired.

We also note that the claims against defendants D'Eletto and Folino arise not out of the events about which Ali complains but rather in the manner in which they processed his grievances. In order to impose liability, he must demonstrate actions of the defendants which resulted in a deprivation of a constitutionally protected right. <u>C.H. ex rel. Z.H. v. Oliva</u>, 226 F.3d 198 (3d Cir.2000), cert. denied 533 U.S. 915 (2001). No such showing is made here.

Accordingly, it is recommended that the defendants' motions to dismiss be granted for failure to state a claim upon which relief may be granted.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                    Respectfully submitted,

                                    s/Robert C. Mitchell,
Entered: May 17, 2006                    United States Magistrate Judge